## SUPREME COURT.

THE MAYOR, ALDERMAN AND COMMONALTY OF THE CITY OF NEW YORK agt. THE FULTON MARKET FISHMONGERS' ASSOCIATION.

### THE SAME agt. SAMUEL L. STORER.

*New York (city of) — Piers and wharfs — Power of the legislature to regulate the making or taking of leases of real estate by the corporation of New York — Fulton fish market — Validity of lease — Duty of clerk of common council as to leases.*

The legislature has power to regulate the use of piers and wharfs in the city of New York, although the same are the property of the corporation.

The legislature has also the power to regulate the taking or making of leases of real estate by the corporation of the city of New York.

The defendants, the Fulton Market Fishmongers' Association, was incorporated by chapter 277 of the Laws of 1869, and by section 3 of said act the commissioners of the sinking fund were authorized to lease to said corporation the present fish market, with portions of the piers adjoining on either side, for a term not exceeding ten years, and providing for the construction of new buildings for a fish market. Pursuant to that act a lease was made for ten years, and in 1879 a new lease for ten years was made. This action is brought to recover two quarters' rent in 1884 under this lease. The commissioners of the sinking fund, under the act of 1883, amending the act of 1869, duly authorized the execution of the lease relied on by the defendants, on condition of the surrender of the then existing lease and of the execution of the new lease by them. This lease having been approved by the counsel to the corporation, was executed by the defendant and also by the mayor, but the seal of the city was not affixed thereto. Defendants surrendered the old lease.

Mayor, &c., of New York agt. Fulton Market Fishmongers' Association.

*Held*, that the act of 1883, amending the act of 1869, is not in conflict with the constitution of this state, and these acts do not in any way violate the corporate rights of the city of New York.

Though the clerk of the common council should sign any leases made by lawful authority, and should fix the seal of the city upon all such leases, as he is made by section 76 of the consolidation act the custodian of such seal, and his signature is thereby required to be fixed to all leases made by the city, yet as defendants have done everything in their power to carry out their contract with the city, it does not rest with the plaintiffs to assert that the old contract, which was abrogated by the new, is still in force in consequence of the wrongful act or insubordination of their agent.

*Special Term, April,* 1886.

*E. Henry Lacombe,* counsel to corporation, for plaintiff; *David J. Dean,* of counsel.

*Adolph L. Sanger,* for common council; *Abel Crook,* for defendant; *Elliott Sandford,* of counsel.

LAWRENCE, J.—The first of these actions is brought to recover the sum of $3,250, the amount of two quarters' rent, which it is alleged became due on the 1st of May and 1st of August, 1884, under a lease from the plaintiffs to the defendants of the right to use and occupy as a fish market, during the term of ten years, from May 1, 1879, the premises then used and occupied by the defendants as a fish market, situated at the slip on the East river, in the city of New York, next northeasterly of the slip at the foot of Fulton street, including the easterly one-half of pier number 22 and the westerly one-half of pier number 23, on either side of said slip for the distance of one-half of the said piers in length, from the bulkhead of said slip on South street, together with said bulkhead, with the appurtenances, and with the right to collect and retain all the wharfage which might accrue for the use and occupation by vessels of more than five tons burden of the aforesaid parts of said piers and bulkheads.

Mayor, &c., of New York agt. Fulton Market Fishmongers' Association.

The second action is brought against Samuel L. Storer, George S. Lamphear and John H. Lynch.

In the complaint in this action it is alleged that the plaintiffs, on the 25th of April, 1882, acting by and through their department of docks, sold and assigned to the defendants, at public auction in the city of New York, the right to collect and retain all wharfage which might accrue for the use and occupation by vessels of more than five tons burden of the outer one-half of the easterly side of pier number 22, East river, for the term of three years from the 1st day of May, 1882, with license and permission to the said defendants to enter and occupy the said premises, and that the defendants promised and agreed to pay to the plaintiffs the annual sum of $5,100, in equal quarterly payments, in advance, on the first days of May, August, November and February during each year of said term, and that the defendants have neglected and refused to pay to the plaintiffs the sum of $1,275, which by the terms of said agreement became due from the defendants to the plaintiffs on the 1st of May, 1884, and the further sum of $1,275, which became due on the 1st of August, 1884.

As another cause of action, the plaintiffs allege that on the said 25th day of April, 1882, acting by and through their department of docks, they sold and assigned to the defendants, at public auction in the city of New York, the right to collect and retain all the wharfage and cranage which might accrue for the use and occupation by vessels of more than five tons burden of about two hundred and eleven feet of the outer end of the westerly half of pier number 23, East river, for the term of three years, from the 1st day of June, 1882, with license and permission to the said defendants to enter and occupy the said premises; that the defendants promised and agreed to pay to the plaintiffs the annual sum or rent of $2,125 therefor, in equal quarterly payments, in advance, on the first days of June, September, December and March in each and every year during said term.

It is then alleged that the defendants have failed to pay the

plaintiffs the two quarters' rent which became due on the first days of June and September, 1884, respectively.

The answer of the defendants in the first case admits the making of the lease and the non-payment of the two quarters' rent, for which the action is brought, and that the defendant is a corporation incorporated by chapter 277 of the Laws of 1869, entitled "An act to incorporate the Fulton Market Fishmongers' Association of the City of New York." It is alleged, by way of affirmative defense, that on or about the 25th day of April, 1882, the plaintiffs, through their department of docks, sold at public auction to Samuel L. Storer and others, acting as trustees for that purpose of the defendant, the right to collect and retain all wharfage, for the use by vessels of more than five tons burden, of the outer one-half of the easterly side of pier number 22, East river, for the term of three years, from the 1st day of May, 1882, at the annual rent of $5,100, payable in equal quarterly payments in advance, from the first days of May, August, November and February in each year, which trustees signed an agreement in writing to that effect.

It is also alleged that at the same sale the said plaintiffs likewise sold to Storer and others, acting as trustees for that purpose for the defendant, the right to collect and retain all wharfage for the use and occupation by vessels of more than five tons burden of about two hundred and eleven feet of the outer end of the westerly half of pier number 23, East river, for the term of three years from the 1st of June, 1882, at the annual rent of $2,125, payable in equal quarterly payments in advance, on the first days of June, September, December and March in each year during said term, which trustees signed an agreement in writing to that effect.

It is then alleged that all rent which became due up to the 1st of May, 1884, and up to the 1st of June, 1884, has been paid under the said lease by the defendants to plaintiffs.

It is further alleged that by chapter 412 of the Laws of 1883, section 3 of chapter 277 of the laws of 1869, being the act

under which the defendant, The Fishmongers' Association, was incorporated, was amended so as to read as follows:

"§ 3. The commissioners of the sinking fund of the city of New York are hereby authorized to lease to the said corporation the present fish market, including one-half of the piers adjoining the same on either side thereof, for the whole distance in length from the bulkhead of said slip, and the lands and waters of the said slip between the same, for a term not exceeding twenty-one years for the purposes aforesaid, upon such terms and conditions as they shall deem most advantageous for the city, and providing for the construction of such new building or alterations, additions and improvements to the present buildings for a fish market, of iron or wood, as they may deem advisable, without delay, provided nevertheless that such lease shall be for the use of all persons now holding stands in the said fish market, to the same extent that they now hold the same, who shall become members of the corporation created by this act, which they are hereby authorized to do within three months after the passage of this act. And further provided, that the said fish market shall be subject to the laws, ordinances and regulations of the corporation of New York, relating to public markets, not inconsistent with the purposes of this act. And further provided, that such lease shall be accepted by the said corporation during the existence of or immediately upon the termination of the existing lease or leases of the said premises, which lease or leases said corporation is hereby authorized to surrender, and the said commissioners of the sinking fund are hereby authorized to accept as a condition of such new lease."

It is further alleged that in or about October, 1883, said association presented its petition to the said commissioners of the sinking fund, wherein after fully stating the facts and reasons therefor, requested said commissioners to give effect to chapter 412 of the Laws of 1883, by granting to said association a lease of said premises, and as a condition thereof that the then existing leases should be surrendered by the then

said leases, and be accepted by the said commissioners; ·that by said petition the term of the new lease was requested to be fixed at twenty-one years, from May 1, 1884, and the rental was to be fixed at a fair valuation, and the terms and conditions were to be agreed upon so that said association might be enabled to provide the facilities and improvements necessary to the fish trade of New York, and to secure a sinking fund to reimburse said association for its improvements.

That thereupon said commissioners, after hearing the views of the dock department, and considering its communications upon the subject, and after hearing the reasons of the said Fulton Market Fishmongers' Association why its petition should be granted, did on the 24th day of December, 1883, by unanimous vote of the mayor, recorder, comptroller, chamberlain and chairman of the finance committee of the board of aldermen, constituting such commissioners, resolved that the prayer of the petitioners be granted, and that the matter be referred to the comptroller and counsel to the corporation, for the purpose of carrying into effect the provisions of the act of the legislature referred to in said petition, and in accordance with the prayer of the petitioners, and that the proposed lease be submitted to this board for approval before execution.

It is further alleged that thereafter said comptroller, after conference with said department of docks, and after proper appraisal by others appointed by him for that purpose, and after negotiations with defendant and said counsel to the corporation, united in a report to the said commissioners of the sinking fund, bearing date April 21, 1884, in which it was stated that a fair and reasonable annual rent for the wharf property required by the Fulton Market Fishmongers' Association, to prosecute their business as wholesale dealers in fresh fish, would, in their judgment, be $12,000 per annum for a lease of twenty-one years, and that a lease has been accordingly prepared by the counsel to the corporation, which was therewith submitted to the commissioners of the sinking fund before execution.

It is further alleged that at their said meeting the commissioners of the sinking fund approved the lease so submitted, and thereby authorized a lease to the defendant of said premises and wharf property at the yearly rental of $12,000, for the term of twenty-one years, commencing May 1, 1884, payable quarterly in advance, and upon the further terms and conditions that the existing leases thereof, being the same mentioned in the complaint and others, should be surrendered, and that the association should execute the lease in said resolution provided for, pursuant to the provisions of chapter 412 of the Laws of 1883, and authorized and directed the mayor and clerk of the common council to execute said lease, when approved by the counsel to the corporation and authorized the comptroller to deliver the same when so executed, and when a counterpart of said lease shall have been executed by the proper officers of said association, and it has been recorded in his office.

It is further alleged that the association in good faith did accept the said lease, and executed and delivered to the plaintiffs the counterpart of said authorized lease, and delivered the same to the plaintiffs, who accepted a surrender of the existing leases, &c., which counterpart and surrender severally were thereupon duly received by said comptroller for record in his office, and said lease was duly approved by the counsel to the corporation, and was thereupon duly executed by the mayor, as directed by said resolution, but that the same has not been executed by the clerk of the common council, nor has the seal of said city been affixed thereto. That the association has requested the plaintiffs to deliver to it the counterpart of said lease, as by said resolution directed, but plaintiffs have not yet complied with such request. It is then alleged that the association has, in good faith and before this action was commenced, duly tendered payment of the rent due under said new lease, and that the plaintiffs have refused to receive the same, wherefore it is demanded by the defendant that the complaint be dismissed.

The answer in the second case, after admitting the sale of

the 25th of April, 1882, by the dock department, of the right to collect and retain wharfage, &c., on the parts of piers 22 and 23, East river, in the complaints referred to, sets forth that the purchase by the defendants of said rights and sales by the plaintiffs, to them aforesaid, were not made to them individually, nor were the agreements aforesaid signed by them as individuals, but as trustees for the Fulton Market Fishmongers' Association, the defendants in the first case. The answer then goes on to set forth substantially the same facts as are averred in the answer of the Fishmongers' Association above set forth.

On the trial of this action the plaintiffs were represented by the counsel to the corporation, and the common council, claiming to be specially interested in the questions involved, also appeared by counsel. The facts averred in the answers of the defendants in each case were fully proved upon the trial.

Elaborate briefs were subsequently filed by counsel for the respective parties, and as the corporation counsel had given an opinion on the 9th of August, 1884, to the commissioners of the sinking fund, adverse to the view of the common council and its clerk, that the clerk was under no obligation to sign the new lease until directed so to do by the common council, a brief was submitted on behalf of the common council. The main questions arising in this case were fully discussed in the brief of the counsel for the common council. Various objections are taken in that brief to the validity of the lease authorized by the commissioners of the sinking fund, but the principal question discussed was as to the constitutionality of the act of 1883, chapter 412, and as to whether a new lease could be given, whether the same would be valid and effectual until the seal of the city had been affixed thereto by the clerk of the common council under its authority.

I do not recognize the force of the argument which was made to show that the act of 1883 is in conflict with the constitution of this state. The defendant, the Fulton Market Fishmongers' Association, was incorporated by chapter 277 of the Laws of 1869, and by section 3 of said act the commissioners

HOWARD'S PRACTICE REPORTS. 499

Mayor, &c., of New York agt. Fulton Market Fishmongers' Association.

of the sinking fund of the city of New York were authorized to lease to the said corporation the present fish market, including one-half of the piers adjoining the same on either side thereof, &c., * * * for a term not exceeding ten years, &c., * * * and providing for the construction of such new building for a fish market of iron or wood, as they may deem advisable, without delay, provided, nevertheless, that such lease shall be for the benefit of all persons now holding stands in the said fish market to the same extent that they now hold the same, who shall become members of the corporation created by this act, which they are hereby authorized to do, within three months after the passage of this act, and further provided that the said new market shall be subject to the laws, ordinances and regulations of the corporation of New York relating to public markets not inconsistent with the purposes of this act; and further provided that such lease shall be accepted by the said corporation within three months after the passage of this act.

Pursuant to that act a lease was executed by the commissioners of the sinking fund for the term of ten years to the defendants. When that lease expired in 1879 a new lease for ten years was executed by the commissioners of the dock department to the defendants, which is the lease under which this action is brought. By chapter 244 of the Laws of 1882, entitled "An act to insure and increase the supply and disposition of wholesome fresh fish in the city of New York, and to regulate the use of piers numbers 22 and 23, East river," said piers were set apart and devoted exclusively until the 1st of May, 1889, for the purposes of fresh fish commerce, and the use of vessels engaged in such business.

That act provided also that such person or persons as now lease or may hereafter lease the same from the mayor, aldermen and commonalty of such city shall be authorized to erect and maintain, &c., * * * such improved structures, &c., * * * as may be necessary and proper to preserve fresh

food fish for supply of the public, and for the more convenient disposition and care of the same.

It was further provided that the plans for such structures, &c., should be first submitted to the board governing the department of docks for their approval, and that the same should not be erected, &c., unless approved of by said board.

There can be no doubt of the power of the legislature to regulate the use of piers and wharves in the city of New York, although the same are the property of the corporation (*see Vanderbilt* agt. *Adams,* 7 *Cowen,* 348; *see also the Matter of the Application of the Union Ferry Company,* 98 *N. Y.,* 139, *and remarks of* RAPALLO, J., *at pages* 156 *and* 157).

I cannot see that chapter 412 of the act of 1883, which amends chapter 277 of the Laws of 1869, authorizing the commissioners of the sinking fund to grant the new lease, which is relied upon by the defendants, conflicts with the provisions of the constitution.

The legislature, after the act of 1869 was passed, transferred to the dock department the power to make the lease which was made in 1879, and the same authority which conferred such power upon the dock department could take it from them and retransfer it to the commissioners of the sinking fund.

The act of 1883 was also in harmony with the provisions of section 102 of the charter of 1873, so far as it related to market property, and it was quite competent for the legislature to extend to the commissioners of the sinking fund the same power in respect to the sale of leasing wharf property belonging to the city. Nor can I see that said acts in any way violate the corporate rights of the city of New York.

The commissioners of the sinking fund are corporate officers quite as much as the members of the common council, and it is for the legislature to determine, in the exercise of its discretion, upon what officers of the municipality certain powers shall devolve. In this case the legislature, for purposes which we must assume were legitimate, have seen fit to vest the determination of the question whether a surrender of the old lease and

the making of a new one to the defendants would be for the interest of the city in the commissioners of the sinking fund. The rights of the corporation of the city of New York were fully protected by providing that that question should be determined by corporate officers.

As was said by FOLGER, J., in the *Matter of Zborowski* (68 *N. Y.*, 92): "It is in the legislative province to direct in what way, through what board of municipal officers or agents, or by what individual municipal officers, legislative or executive, the power shall be exerted. If it shall be found that the legislature of the state has enacted that this power shall be placed in the hands of a single officer, as the commissioner of public works, it is not to be said that this is a derogation from the chartered powers and privileges of the city of New York, so often confirmed to it, but only another mode for the exercise thereof, devised by the wisdom or the will of the legislature."

The learned judge, in a previous part of the opinion, had stated "that the general power given by the Montgomerie charter may be curtailed or controlled by legislative action is recognized by this court" (*see, also, The People ex rel. Cox* agt. *Special Sessions*, 7 *Hun*, 214).

That the legislature has the power to regulate the taking or making of leases of real estate by the corporation of the city of New York has also been decided in actions relating to that subject (*see Schanck* agt. *The Mayor, &c., of the City of New York*, 69 *N. Y.*, 444, *and People ex rel. Schanck* agt. *Green*, 64 *id.*, 499).

The evidence in this case shows that the commissioners of the sinking fund, under the power vested in them by the act of 1883, duly authorized the execution of the lease relied upon by the defendants, on condition of the surrender of the then existing lease by the defendants, and of the execution of the new lease by them. It also discloses that the lease having been approved by the counsel to the corporation, was executed by the defendants and also by the mayor of the city of New York, and that the defendants have surrendered, so far as they were

able, the old lease, by delivering the same to the counsel of the corporation, who has delivered it to the comptroller.

As I regard the act of 1883 as entirely constitutional and valid, it is only necessary for me to notice one other objection raised by the plaintiffs upon the trial.

It was contended that because the clerk of the common council had failed to affix the seal of the city to the new lease, and because his signature had not been given thereto, the lease was incomplete and constituted no bar to the maintenance of this action.

It seems only necessary, in answer to that objection, to refer to the opinion given by the counsel to the corporation to the commissioners of the sinking fund on the 9th day of August, 1884, which is submitted with his brief.

In that opinion the learned counsel arrives at the conclusion, and so advises the commissioners, that the clerk of the common council should sign any leases made by lawful authority, and that he should affix the seal of the city to all such leases, as he is made by section 76 of the consolidation act the custodian of such seal, and his signature is thereby required to be affixed to all leases made by the city.

It was, therefore, the duty of the clerk of the common council, after the lease in question had been directed to be made by the commissioners of the sinking fund, and the same had been exe-cuted by the mayor, to affix his signature and the seal of the city to the same. That he has not done so cannot alter the contract into which the city has entered with the defendants.

It is true that by a proper proceeding the clerk might be compelled to sign said lease and affix such seal. But as the defendants have done everything in their power to carry out their contract with the city, it does not rest with the plaintiffs to assert that the old contract, which was abrogated by the new, is still in force in consequence of the wrongful act or insubordination of their own agent.

For these reasons, I am satisfied that the defendant in the first action is entitled to a judgment dismissing the complaint,

with costs. So far as the second action is concerned, it is clear that Storer and his associates acted in a representative capacity for the stand owners in the fish market, and that such rights as they acquired by the purchase or bid of April 25, 1882, were duly vested in the Fulton Market Fishmongers' Association by the assignments dated July 6, 1882, by which Lamphear and Lynch assigned their interest in the bids to Storer, and Storer assigned his interest to the Fulton Market Fishmongers' Association.

It is, I think, evident that the legislature, in passing the act of 1883, had in contemplation not only the property leased to the Fishmongers' Association, but also that which had been bid for by Storer and others.

This is clear from the fact that the property held by the Fishmongers' Association only ran to and included the slip and part of the waters, &c., from the centre of pier number 22 to and including the centre of pier number 23, with the bulkhead between the same; Storer and his associates had acquired the right to the outer portions of said piers, that is from the centre to the ends.

The act of 1882 sets apart the whole slip for the whole distance of said piers in length from the bulkhead for the sale of wholesome fresh fish. The act of 1883 authorized a lease to the said corporation of the present fish market, including one-half of the piers adjoining the same on either side thereof for the whole distance in length from the bulkhead of said slip, &c., thus embracing not only that part of the piers and slip already held by the Fishmongers' Association under its lease, but also that part of the same acquired by Storer and others under the sale of April 25, 1882, and assigned by them, as we have seen, to the Fishmongers' Association on the 6th of July, 1882.

It follows, therefore, that the complaint in the second action should also be dismissed, with costs.

Findings may be settled on five days' notice.